*1021 TEXTO COMPLETO DE LA RESOLUCIÓN
Se solicita la revisión de dos dictámenes emitidos por el Tribunal de Primera Instancia (TPI). El primero fue una Resolución emitida por el Hon. José M. D’Anglada Raffucci, Juez Municipal de la Sala de Investigaciones del Centro Judicial de San Juan (Juez D’Anglada), el 22 de diciembre de 2009, en el caso Bárbara Schettini Hernández v. Iván Rodríguez Oliver, Caso Núm. BPN-09-0219, mediante la que se deniega una petición de orden de protección por abuso sexual bajo la Ley Núm. 177 de 1 de agosto de 2003, según enmendada (Ley 177), Ley para el Bienestar y Protección Integral de la Niñez, 8 L.P.R.A. sees. 444 y ss., presentada por la peticionaria, Bárbara Schettini Hernández, contra el recurrido, Iván Rodríguez Oliver, a favor del niño procreado por las partes de cinco (5) años, I.G.R.S. Además, se solicita que revisemos la Orden emitida por la Hon. Laura Ivette Ortiz Flores, Juez Superior (Juez Ortiz), el 23 de diciembre de 2009, la cual fue notificada el 28 del mismo mes y año, en el caso Iván R. Rodríguez Oliver v. Bárbara Schettini Enríquez, Caso Núm. KCU2008-0055. Mediante la misma se declaró no ha lugar una moción urgente presentada por la peticionaria el 21 de diciembre de 2009 en la que solicitó la suspensión temporera de las relaciones paterno filiales y se ordena a las partes cumplir con la Orden de 12 de mayo de 2009. Denegamos.
I
Según surge del expediente, el recurrido presentó una demanda sobre relaciones patemo-filiares y alimentos sobre el menor I.G.R.S., quien es fruto de una relación consensual entre las partes. Luego de varios trámites procesales, el 12 de mayo de 2009 la Juez Ortiz celebró una vista de informe social con la comparecencia de las partes y sus abogados. En la misma se presentó el testimonio e Informe Social Forense de 11 de abril de 2009 de la trabajadora social Zaydelisse Matos (Informe).
Mediante Resolución de 12 de mayo de 2009, la Juez Ortiz expresó que acogía las recomendaciones del Informe. En consecuencia dispuso lo siguiente:
“1. El señor Rodríguez se relacionará con el menor fines de semanas altemos de viernes a las 6:00 p.m. a domingos a las 6:00 p.m. El señor Rodríguez recogerá y entregará al menor en el hogar materno.
2. El fin de semana del día de los padres el menor estará con el papá, señor Rodríguez, independientemente a quién le corresponda el menor ese fin de semana.
3. El fin de semana del día de las madres, el menor permanecerá con la mamá, señora Schettini, independientemente a quien le corresponda el menor.
4. En el verano se continuará con el plan de relaciones establecido en fines de semanas alternos.
5. En la temporada Navideña, el señor Rodríguez se relacionará con el menor el 25 de diciembre, 1 y 6 de enero de 1:00 p.m. a 6:00 p.m. La señora Shettini permanecerá con el menor el 24 y 31 de diciembre y 5 de enero. Este plan se alternará cada año.
6. Se le ordena a las partes participar del Taller de Padres y Madres para Siempre.
7. Se le ordena a las partes recibir terapia de mediación para mejorar las relaciones interpersonales y ponerse de acuerdo en los asuntos relacionados al menor.
8. Se le ordena a la señora Shettini recibir tratamiento psicológico y psiquiátrico para la condición de salud mental.
*1022 9. Se le ordena a la señora Schettini mantener informado al señor Rodríguez de todos los asuntos del menor y a consultar con él antes de tomar decisiones sobre el menor.”
Además, el TPI ordenó a las partes en corte abierta informar por moción los señalamientos y objeciones que tuvieran sobre el Informe. El 6 de junio de 2009, el recurrido presentó una moción en la cual, por varias razones, solicitó que se le otorgara la custodia del menor.
Por su parte, mediante moción de 19 de junio de 2009, la peticionaria se opuso a la solicitud de custodia del recurrido. En cuanto a la Resolución de 12 de mayo de 2009, indicó que objetaba el diagnóstico de que padecía de trastornos de bipolaridad y personalidad que le hizo el Dr. Reinaldo E. Kianes (Dr. Kianes) y existía la dificultad de poder cumplirse con lo ordenado en cuanto a que la peticionaria mantuviera informado y consultara al recurrido de los asuntos del menor. Solicitó se celebrara una vista en la que “los profesionales que realizaron las evaluaciones puedan aclarar y explicar a las partes y al Tribunal sus hallazgos de manera más clara y concreta”.
El 10 de julio de 2009, la Juez Ortiz ordenó al recurrido informar su posición sobre esta moción de la peticionaria. Además, según indica el recurrido, posteriormente, la Juez Ortiz ordenó que el Programa de Relaciones de Familia preparara un nuevo informe social, el cual está pendiente de finalizarse. [1]
El 27 de agosto de 2009, la peticionaria presentó una moción en la que informó su posición en cuanto a la moción que el recurrido presentó el 6 de junio de 2009 y solicitó se denegara la solicitud de custodia de éste.
Por otra parte, el 18 de noviembre de 2009, la peticionaria presentó una petición de orden de protección bajo la Ley 177 porque alegadamente su hijo le informó que su padre le había introducido sus dedos dentro de su ano en repetidas ocasiones en momentos en que no se estaba bañando ni estaba evacuando y, a ese momento, la peticionaria se había percatado días antes que, luego de una visita al recurrido, el menor había mostrado un comportamiento sexual extraño, moviendo su cintura en forma rotativa y doblándose desnudo luego de bañarse para con sus manos, abrir sus nalgas exponiendo su ano.
El 20 de noviembre de 2009 se expidió una orden de protección ex parte y se citó a vista. La misma se celebró ante el Juez D’Anglada el 23 de noviembre y 9 de diciembre de 2009. Testificaron las partes, el menor, el Sr. Miguel Fernández (Sr. Fernández), trabajador social del Departamento de la Familia, la Dra. Elena Rivera Villamil (Dra. Rivera), psicóloga que evaluó al menor, la Dra. Montilla, pediatra que examinó al menor, y la Sra. Nayda Díaz (Sra. Díaz), trabajadora social del Tribunal de Relaciones de Familia. Luego de evaluar la credibilidad que le merecieron dichos testimonios y las alegaciones de las partes, el Juez D’Anglada emitió Resolución el 22 de diciembre de 2009 en la cual decidió no expedir la orden de protección permanente porque consideró que no existían elementos constitutivos de maltrato o negligencia del recurrido hacia el menor.
De otra parte, el 22 de diciembre de 2009, la peticionaria presentó ante la Juez Ortiz una “Moción de Emergencia y en Cumplimiento de Orden”. Indicó, en lo pertinente, que el 20 de noviembre de 2009 había solicitado una orden de protección a favor del menor por expresiones de éste sobre la conducta del recurrido en las últimas ocasiones en las que se habían relacionado. Dichas expresiones fueron que “su padre lo maltrataba, golpeaba y que incluso le daba puños en sus nalgas y ano lo que le causaba dolor, por lo que no quería relacionarse con él”. Indicó que se celebró vista ante el Juez D’Anglada en la que declararon el Sr. Fernández, la Sra. Díaz y la Dra. Rivera y éstos validaron el abuso físico y emocional al menor y recomendaron se suspendieran las relaciones paterno-filiales. La peticionaria expresó que el menor le indicó al Juez D’Anglada que su padre le daba de forma abusiva, le había dado en las nalgas con un palo y le tiraba con objetos, pero el Juez no emitió la orden, aunque le indicó al recurrido que el menor había dicho que recibía maltrato físico de su padre y le solicitó a éste que le diera espacio al menor antes de relacionarse con él.
*1023 La peticionaria acompañó con su moción una citación a la Fiscalía de San Juan y un informe de la Dra. Rivera. En éste, la Dra. Rivera expresa que cuando le preguntó al menor cómo se sentía con su padre, éste indicó “No me gusta con mi papá porque el (sic) me hace... hace un gesto con el puño cerrado de abajo hacia arriba varias veces. Le pregunto cómo que así, a lo que el menor contesto (sic), ‘por detrás’, ‘duele’.”
Mediante orden de 23 de diciembre de 2009, la Juez Ortiz ordenó a las partes que cumplieran con la Resolución de 12 de mayo de 2009, bajo apercibimiento de desacato.
El 7 de enero de 2010, la peticionaria presentó un recurso de certiorari ante este Tribunal. Señaló que se cometieron los siguientes errores:
“Primer Error
Erró el Tribunal de Primera Instancia cuando acogió las recomendaciones del Informe Social sin dar una oportunidad a la compareciente a impugnar el Informe, en violación crasa al debido proceso de Ley.
Segundo Error
Erraron los dos Jueces del Tribunal de Primera Instancia que denegaron la suspensión temporera de las Relaciones Patemo-Filiales bajo la Ley 177 en lo que el Departamento de la Familia y la Policía de Puerto Rico investigan las expresiones del niño de que fue víctima de abuso sexual por su padre.”
Además, con su recurso, la peticionaria presentó un escrito titulado “-Urgente- Petición Pendente Lite y Ex Parte de Suspensión de Relaciones Patemo-Filiales entre Padre e Hijo al amparo de la Ley 111 de 1 de agosto de 2003 en lo que el Departamento de la Familia y la Policía de Puerto Rico Realiza Investigación sobre Posible Abuso Sexual por Parte del Padre con su Hijo de Cinco Años de Edad”. Mediante Resolución de 7 de enero de 2010, un Panel Especial de Navidad dispuso que hasta que la peticionaria cumpliera con la Regla 79 (E) del Reglamento de este Tribunal no se consideraría su moción urgente.
La peticionaria presentó el 13 de enero de 2010 un escrito titulado “-Urgente- Aviso de Notificación al Amparo de la Regla 79 de este Tribunal, de Solicitud de Consideración Expedita e Informando sobre la Continuación de Conducta Nociva del Padre hacia su Hijo” y el siguiente día 14 un escrito titulado “-Urgente-Segunda Moción de Solicitud de Consideración Expedita”. Mediante Resolución de 15 de enero de 2010 le indicamos a la peticionaria que sólo había notificado dicha moción por correo electrónico al recurrido, pero que no había hecho lo mismo en cuanto a sus dos mociones urgentes y el recurso según lo requiere la Regla 79 (E) del Reglamento de este Tribunal y hasta que no se verificara que hubiera cumplido con dicha Regla no se considerarían sus mociones urgentes.
El 15 de enero de 2010, la peticionaria presentó un escrito titulado “-Urgente- Aviso de Notificación de Mociones Mediante Correo Electrónico” en el que acreditó haber cumplido con lo dispuesto en la Regla 79 (E).
El 19 de enero de 2010, el recurrido presentó oposición al recurso. En esa misma fecha presentó un escrito titulado “Moción en Cumplimiento de Orden, e Informativa y Solicitud de Desestimación”, indicando que la peticionaria no notificó al Lie. Iván Igartúa, abogado que representó al recurrido en el caso bajo la Ley 177. Mediante Resolución de 20 de enero de 2010 le concedimos a la peticionaria hasta el 21 de enero de 2010 para que acreditara si notificó al Lie. Iván Igartúa el recurso de certiorari y las mociones que presentó en este caso.
El 22 de enero de 2010, la peticionaria presentó un escrito titulado “-Urgente- Aviso de Notificación al Ledo. Iván J. Igartúa Vera y del Recurso de Marras y Mociones Subsiguientes; Solicitud Reiterando Expedición de Orden Pendente Lite”, en la que indicó que había cumplido con lo ordenado en la Resolución de 20 de enero *1024 de 2010 y reiteró su solicitud pendente lite suspendiendo provisionalmente las relaciones patemo-filiales. Resolvemos.
n
A
En repetidas ocasiones, el Tribunal Supremo ha expresado que en su misión de hacer justicia la discreción es el más poderoso instrumento reservado a los jueces. Banco Metropolitano v. Berrios, 110 D.P.R. 721, 725 (1981). En el ámbito del desempeño judicial, la discreción no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho, sino una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión Justiciera. Banco Popular de P.R. v. Municipio de Aguadillo, 144 D.P.R. 651, 657-658 (1997).
En Pueblo v. Ortega Santiago, 125 D.P.R. 203, 211 (1990), se estableció que:
“El abuso de discreción se puede manifestar de varias maneras en el ámbito judicial. Se incurre en ello, entre otras y en lo pertinente, cuando el juez, en la decisión que emite, no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando por el contrario el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en el mismo; o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez livianamente sopesa y calibra los mismos.”
En el contexto de esa doctrina, debemos tener presente el alcance de nuestro rol como foro apelativo al intervenir precisamente con la discreción judicial. Así pues, es norma reiterada que este foro no habrá de intervenir con el ejercicio de la discreción del Tribunal de Instancia, salvo en caso de “un craso abuso de discreción o que el tribunal actuó con prejuicio y parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial”. Lluch v. España Service, 117 D.P.R. 729, 745 (1986).
Asimismo, se ha resuelto que “los tribunales apelativos no debemos, con relación a determinaciones interlocutorias discrecionales procesales, sustituir nuestro criterio por el ejercicio de discreción del tribunal de instancia, salvo cuando dicho foro haya incurrido en arbitrariedad o craso abuso de discreción”. Meléndez v. Caribbean Int’l News, 151 D.P.R. 649, 664 (2000). Ello está predicado en la premisa de que el foro apelativo no puede pretender administrar ni manejar el trámite regular de los casos ante el TPL No hay duda de que ese es el foro que mejor conoce las interioridades del caso y quien está en mejor posición para tomar las medidas que permitan el adecuado curso del caso hacia su final disposición.
De otro lado, es sabido que el auto de certiorari es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. Pueblo v. Colón Mendoza, 149 D.P.R. 630, 637 (1999). Distinto al recurso de apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de certiorari de manera discrecional, por tratarse, de ordinario, de asuntos interlocutorios. Sin embargo, nuestra discreción debe ejercerse de manera razonable, procurando siempre lograr una solución justiciera, como ya señalamos. Negrón v. Srio. de Justicia, 154 D.P.R. 79, 91 (2001).
Con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional de entender o no en los méritos de los asuntos que nos son planteados mediante el recurso de certiorari, la Regla 40 del Reglamento de este Tribunal establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de certiorari. A esos efectos, la referida Regla dispone lo siguiente:
*1025 “El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.” 4 L.P.R.A. Ap. XXII-B, R. 40 (Supl. 2009).
B
De otra parte, reiteradamente nuestro Tribunal Supremo ha resaltado la importancia social que tiene el que se permita, de la manera más libre posible, que un padre no custodio se relacione con su hijo menor de edad. Se trata de un derecho de naturaleza personal y familiar y su fin es favorecer y facilitar amplias relaciones humanas y afectivas entre familiares. Sterzinger v. Ramírez, 116 D.P.R. 762, 775 (1985). Se ha reconocido que relacionarse de manera adecuada con sus padres es parte integral del bienestar del menor por el cual deben velar los tribunales. Hidalgo v. Depto. Servicios Sociales, 129 D.P.R. 606, 619 (1991); Sterzinger v. Ramírez, 116 D.P.R., a la pág. 775.
No obstante, según el Artículo 107 del Código Civil, 31 L.P.R.A. see. 383, el tribunal, al hacer determinaciones de patria potestad y custodia, siempre tendrá como norte la protección y el mejor interés del menor. Maldonado v. Burris, 154 D.P.R. 161, 164 (2001). Sin embargo, en ausencia de circunstancias extraordinarias, los tribunales pueden regular las relaciones entre padre e hijos, pero no prohibirlas o eliminarlas del todo. Sterzinger v. Ramírez, 116 D.P.R., a las págs. 775-776.
Según ha establecido el Tribunal Supremo, al evaluar qué es lo mejor para el menor, a los fines de regular las relaciones patemo-filiales, los tribunales deberán considerar los siguientes factores: (a) la preferencia del menor, su sexo, edad y salud mental y física; (b) el cariño que pueda brindársele por las partes en controversia; (c) la habilidad de las partes para satisfacer debidamente las necesidades afectivas, morales y económicas del menor; (d) el grado de ajuste del menor al hogar, la escuela y la comunidad en que vive; (e) la interrelación del menor con las partes, sus hermanos y otros miembros de la familia; y (f) la salud síquica de todas las partes. R. Serrano Geyls, Derecho de Familia de Puerto Rico y Legislación Comparada, Vol. I, Programa de Educación. Jurídica Continua UIPR, 1997, pág. 724. No obstante lo anterior, el Tribunal Supremo ha establecido de manera inequívoca que, en casos de maltrato, el bienestar del menor prevalece sobre el derecho de los padres a relacionarse con éste. Pérez, Ex Parte v. Depto. de la Familia, 147 D.P.R. 556, 563-565 (1999).
C
En nuestra jurisdicción, toda determinación judicial está amparada por una presunción de corrección y *1026 legalidad. Vargas v. González, 149 D.P.R. 859, 866 (1999). Como regla general, un foro apelativo no debe intervenir con las determinaciones de hechos de un tribunal de primera instancia, ya que son esencialmente el resultado de la apreciación de la prueba vertida ante éste y la adjudicación de credibilidad que dicho foro realizó. López Vicil v. ITT Intermedia, Inc., 142 D.P.R. 857, 864 (1997).
Así, el alcance de la revisión judicial sobre cuestiones de hechos está regulado por lo dispuesto en la Regla 43.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 43.2. Esta Regla dispone en lo pertinente que “[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos”.
La norma establecida es que la apreciación de la prueba realizada por el juzgador de primera instancia merece deferencia y sus determinaciones deben ser respetadas, en ausencia de error manifiesto, pasión, prejuicio o parcialidad. Arguello v. Arguello, 155 D.P.R. 62, 78-79 (2001). Esta norma descansa en que el juzgador de los hechos está en mejor posición para evaluar la prueba porque vio y escuchó declarar a los testigos y apreció su “demeanor”. López Vicil v. ITT Intermedia, Inc., 142 D.P.R., a la pág. 865.
ni
La peticionaria alega que el Juez D’Anglada incidió al no expedir la orden de protección para suspender las relaciones paterno-filiales mientras se investigaban las alegadas expresiones del menor de que fue abusado sexualmente por el recurrido. Expresa que ella declaró que el niño le indicó que el recurrido le había penetrado su ano con sus dedos, el menor expresó al Juez D’Anglada que su padre lo agredía físicamente y el Sr. Fernández recomendó se expidiera dicha orden, por lo que procedía su solicitud. No le asiste la razón.
Como se conoce, el dictamen de un foro apelativo no puede fundamentarse solamente en la apreciación que presenten las partes en sus alegatos, no importa cuán convencidos éstos estén sobre su certeza. Es necesario partir de la premisa que concede presunción de corrección al Juez que en primera instancia oyó y vio cara a cara la prueba y a las partes. Meléndez v. Caribbean Int’l News, 151 D.P.R., a la pág. 664. Por ello, ausente el establecimiento de los elementos de pasión, prejuicio, parcialidad o error manifiesto, no debemos intervenir con el dictamen de instancia, salvo que del análisis de la situación surja en nuestro ánimo “insatisfacción o intranquilidad de conciencia tal que estremezca nuestro sentido básico de justicia”. Pueblo v. Cabán Torres, 117 D.P.R. 645, 648 (1986). En este caso, las partes, el menor y varios testigos y peritos declararon ante el Juez D’Anglada. Según surge de la Resolución que emitió dicho magistrado, conforme la ponderada evaluación que éste hizo de la credibilidad que le merecieron dichos testimonios, emitió el dictamen recurrido. La peticionaria no ha establecido que dicho foro incurriera en pasión, prejuicio, parcialidad o error manifiesto, por lo que no se cometió el error señalado.
De otra parte, en el primer error la peticionaria sostiene que incidió la Juez Ortiz al acoger el Informe sin permitirle impugnarlo y, al no celebrar la vista de impugnación que la peticionaria solicitó, abrió las puertas para que el menor sufriera severos daños emocionales y lo expuso al abuso sexual que informó. Añade que lo anterior se agravó cuando la Juez Ortiz hizo caso omiso a la solicitud de la peticionaria, luego de la vista celebrada por el Juez D’Anglada, de que se suspendieran las relaciones paterno-filiales hasta que se investigara el alegado abuso sexual. Tampoco le asiste la razón.
Primeramente, surge de la Resolución de 12 de mayo de 2009 que la Juez Ortiz celebró una vista a la cual comparecieron las partes y en la cual declaró la trabajadora social que preparó el Informe. A su vez, la Juez Ortiz permitió a las partes que sometieran por moción sus planteamientos sobre el Informe y éstas así lo hicieron. Por lo tanto, las partes tuvieron amplia oportunidad para cuestionar el Informe.
Además, en el escrito fechado el 19 de junio de 2009 que la peticionaria presentó como reacción al Informe *1027 y la Resolución de 12 de mayo de 2009, la peticionaria no hizo referencia a que el recurrido hubiera cometido abuso físico o mental alguno contra el menor y expresó que su objeción al Informe era en cuanto al diagnóstico del Dr. Kianes de que la peticionaria padecía de trastornos de bipolaridad y personalidad. Y la vista que solicitó fue para que “los profesionales que realizaron las evaluaciones puedan aclarar y explicar a las partes y al Tribunal sus hallazgos de manera más clara y concreta”.
Por lo tanto, la vista solicitada por la peticionaria sobre el Informe no fue para cuestionar las relaciones patemo-filiales establecidas en la Resolución, ni se refería al alegado abuso contra el menor que ahora aduce la peticionaria. Además, según indicado, la Juez Ortiz ordenó que se preparara un nuevo informe social por el Programa de Relaciones de Familia y el mismo está pendiente de finalizarse, por lo que resulta académico el planteamiento de la peticionaria.
Por otra parte, en la moción que presentó el 22 de diciembre de 2009 a la Juez Ortiz, la peticionaria no expresó específicamente que el menor hubiera sido objeto de abuso sexual por parte del recurrido, sino que indicó que éste alegadamente había agredido al menor física y emocionalmente. Del informe de la Dra. Rivera tampoco surgía un señalamiento de posible abuso sexual por parte del recurrido. Es norma establecida que este Tribunal no considerará errores no planteados por las partes a nivel de instancia. Sánchez v. Eastern Air Lines, Inc., 114 D.P.R. 691, 696 (1983). Véase, además, Trabal Morales v. Ruiz Rodríguez, 125 D.P.R. 340, 351 (1990). Debido a que la peticionaria alega ante este Tribunal que le planteó a la Juez Ortiz que el menor había sido objeto de abuso sexual por su padre y el expediente demuestra que eso no fue lo que adujo en el TPI, no podemos atender su planteamiento.
De todos modos, hemos evaluado este error y no encontramos que se haya cometido. Aunque el señalamiento de la peticionaria de un alegado abuso sexual por el recurrido hacia el menor es uno serio que nos causa preocupación, al considerar la totalidad del expediente ante nos, sus argumentos no nos mueven a expedir el auto solicitado y revocar a la Juez Ortiz.
Primeramente, la peticionaria no ha presentado un informe pericial que valide su alegación. El alegado abuso sexual no surge del informe de la Dra. Rivera. Tampoco se nos ha presentado un informe en ese sentido de la pediatra que examinó al menor, la Dra. Montilla, o de los trabajadores sociales. Más importante aún es que el Juez D’Anglada escuchó la declaración de las partes, el menor y los peritos y no le mereció crédito la versión de la recurrida. Además, no podemos abstraemos que la Juez Ortiz ordenó que las partes cumplieran con su dictamen sobre las relaciones patemo-filiales y el recurrido ha estado planteando repetidamente que la peticionaria ha dificultado que él pueda relacionarse con su hijo. Por lo tanto, los argumentos de la peticionaria no nos mueven a variar los dictámenes recurridos. No obstante, advertimos que la Juez Ortiz deberá mantenerse atenta y procurar que prontamente se finalice el nuevo informe social, de manera que, de considerarlo necesario, celebre una vista urgente para decidir si, en protección y el mejor interés del menor, tanto las relaciones paterno filiales como la custodia del menor deben mantenerse como dispuso en la Resolución de 12 de mayo de 2009.
En resumen, al tenor de los criterios establecidos por la citada Regla 40 del Reglamento del Tribunal de Apelaciones, no vemos razones por las cuales debamos expedir el auto de certiorari solicitado. Entendemos que las determinaciones hechas por el TPI no son contrarias a derecho. De igual manera, nos parece que la etapa en la cual se encuentran los procedimientos no es la más adecuada para intervenir, toda vez que está pendiente que se rinda un nuevo informe social por el Programa de Relaciones de Familia que será evaluado por el TPI.
IV
Por los fundamentos expuestos, se deniegan el recurso presentado y las mociones urgentes.
La Juez Bajandas Vélez, aunque coincide con la mayoría en cuanto a lo resuelto sobre el alegado abuso sexual, considera que, en cumplimiento con nuestro deber de parens patriae que nos obliga a atender el *1028 bienestar físico y emocional de los menores con celeridad, procedía expedir el auto y modificar la determinación de la Juez Ortiz para ordenarle que celebrara una vista a la brevedad posible en la que dilucidara las alegaciones de maltrato físico que planteó la peticionaria en su moción de 22 de diciembre de 2009 y no fueron atendidas por la Juez Ortiz en el dictamen recurrido.
Adelántese inmediatamente por correo electrónico o telefax o teléfono y posteriormente por la vía ordinaria.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones
ESCOLIO 2010 DTA 47

. Oposición al recurso presentado por el recurrido, págs. 3-4.